[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The plaintiff Heidi Lawson brought this action against her parents Blair Lawson and Louise Lawson claiming injuries as a result of sexual assault occurring during her childhood. The defendant Louise Lawson moves for summary judgment to enter in her favor on the grounds that the statute of limitations and the doctrine of parental immunity bar the claims against her.
The following facts are not in dispute for purposes of this motion and are established by the pleadings and the affidavit accompanying the plaintiff's memorandum. The plaintiff was born on September 18, 1964, and the writ, summons, and complaint were served on the defendants on August 25, 1999. The action was thus initiated within 17 years of the plaintiff's 18th birthday.
The claims by the plaintiff against the defendant Louise Lawson arise from the allegations that from the age of 5, for a period of 7 years, the plaintiff was sexually abused by her father, this defendant's husband. In CT Page 1204 one count, the plaintiff alleges that the defendant Louise Lawson knew or should have known of this pattern of sexual assaults and that she was negligent in 1) not protecting the plaintiff; 2) ignoring the plaintiff's complaints; and 3) failing to obtain medical attention or therapeutic evaluation or treatment for the plaintiff In a second count against Louise Lawson, the plaintiff alleges that this defendant negligently failed to prevent the sexual contact or to protect the plaintiff, that this negligence was extreme and outrageous and that this defendant knew or should have known that the conduct of the defendant Blair Lawson would result in severe emotional distress to the plaintiff.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Alvarez v. New Haven Register,Inc., 249 Conn. 709, 714 (1999); Rivera v. Double A Transportation,Inc., 248 Conn. 21, 24 (1999); Orkney v. Hanover Ins. Co., 248 Conn. 195,201 (1999). A "material" fact is one which will make a difference in the outcome of the case. Morascini v. Commissioner of Public Safety,236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431, 433
(1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowlingv. Kielak, 160 Conn. 14, 16 (1970); Dorazio v. M.B. Foster Electric Co.,157 Conn. 226, 228 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 781 (1991).
By way of special defense and this motion, the defendants propose that the action against defendant Louise Lawson is barred by the application of General Statutes § 52-584. That statute provides that no personal injury action caused by negligence
 shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . .
The plaintiff responds that General Statutes § 52-577d not §52-584 is the applicable statute of limitations. That statute reads: CT Page 1205
 Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than seventeen years from the date such person attains the age of majority.
It is not disputed that if § 52-584 is the applicable statute, the plaintiff's claims against Louise Lawson are time barred, and if §52-577d is the applicable statute, the plaintiff's claims against Louise Lawson are timely.
The defendants argue that § 52-577d does not apply to negligence against persons who are not perpetrators of the sexual abuse. They rely on the phrase "notwithstanding the provisions of Section 52-577," because it does not refer to § 52-584.[1] They claim that the legislature did not see or address a conflict between § 52-577d and § 52-584. If the legislature had intended otherwise, it would have included §52-584 in the "notwithstanding" phrase. While this argument has logical appeal, in light of the legislative history. the court is not persuaded.University of Connecticut v. Freedom of Information Commission,217 Conn. 322, 328 (1991). (turn to legislative history when latent ambiguity exists in statute).
While there is no appellate authority addressing this issue, there are several persuasive trial court decisions that have. In Almonte v. NewYork Medical College, 851 F. Sup. 34 (D.Conn. 1994), U.S. District Judge Nevas interpreted the language of the statute to apply to nonperpetrators of the sexual abuse as follows:
 The court's conclusion is driven in large part by the language of the statute. Quite simply, the statute does not expressly limit its application to offenders; rather, reference to the unambiguous language of the statute indicates that the statutory focus is on actions flowing from a particular type of harm, and not parties. In other words, in defining the scope of the statute, courts should look to whether the underlying harm was allegedly "caused by sexual abuse, sexual exploitation or sexual assault," § 52-577d, rather than whether the named defendants are potentially primarily or only secondarily liable for the alleged harm.
Id., 37. CT Page 1206
He noted one of the purposes behind the statute, citing Roberts v.Caton, 224 Conn. 483, 493 (1993), was to allow a plaintiff "sufficient time to recall and come to terms with traumatic childhood events before he or she must take action." Almonte v. New York Medical College, supra, 37.
Further, in considering the argument by the defendants, the court is guided by the following tenet of statutory construction. "It is basic that common sense must be used in statutory construction and that a statute should not be interpreted in any way to thwart its purpose . . . [or so as to lead] to absurd consequences and bizarre results." (Brackets in original.) Keeney v. Fairfield Resources, Inc., 41 Conn. App. 120, 132
(1996). Should the court interpret the statute as the defendants wish, then the result would be bizarre: while actions against the alleged perpetrators of sexual abuse would be allowed, actions against those allegedly negligent in failing to prevent the abuse would not. Further, as noted previously, the legislative history of the statute supports a broad interpretation. See Todd M. v. Richard L., 44 Conn. Sup. 527 (1995) § 52-577d applicable statute of limitations in negligence action against non perpetrator of sexual abuse); Coburn v. Ordner, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0306715 (March 23, 1995, Gormley, J. (14 Conn. L. Rptr. 9) (denial of summary judgment as to negligent counts against non perpetrator). The court is persuaded by these cases that the applicable statute of limitations is § 52-577d. The purpose behind the statute would not be served by barring an action for injuries arising out of alleged sexual abuse, exploitation or assault. Accordingly, the plaintiff's action is not time barred as to Louise Lawson.
The defendant also moves for summary judgment on the grounds that the doctrine of parental immunity bar the negligence counts against Louise Lawson. Under that doctrine, "a parent is not liable civilly to his child for personal injury inflicted during [the child's] minority. . . ."Mesite v. Kirchenstein, 109 Conn. 77, 82-83 (1929).
The defendants rely heavily upon the case Dubay v. Irish, 207 Conn. 518
(1988), to argue that no exception to the parental immunity doctrine applies here. In that case, the Supreme Court held that the parental immunity doctrine barred an action by a daughter against her mother where the daughter had attempted suicide through the ingestion of her mother's prescription medication and the attempt resulted in organic brain damage and mental retardation. The negligence claims against the mother included maintaining dangerous drugs in the home while knowing of her daughter's suicidal tendencies, failing to hide those drugs, failing to warn her daughter not to consume the drugs, failing to determine that her daughter CT Page 1207 consumed the drugs in a timely fashion and failing to obtain timely medical care.
The pertinent issue before the Dubay court was whether the parental immunity doctrine should be abrogated in cases where a parent has liability insurance. In holding that the doctrine should not be abrogated in such circumstances, the court said,
 The supervision, care and instruction of one's child involves issues of parental control, authority and discretion that are uniquely matters of a very personal type. . . .Each parent has unique and inimitable methods and attitudes on how children should be supervised. Likewise, each child requires individualized guidance depending on intuitive concerns which only a parent can understand. Also, different cultural, educational and financial conditions affect the manner in which different parents supervise their children. Allowing a cause of action for negligent supervision would enable others, ignorant of a case's peculiar familial distinctions and bereft of any standards, to second-guess a parent's management of family affairs. . . .
 Accordingly, we decline to abrogate the doctrine of parental immunity in cases, such as this, involving allegations of the negligent exercise of parental discretion with regard to the care, supervision and instruction of a child based solely upon the existence of liability insurance. Courts should not unnecessarily involve themselves in the day-to-day exercise of parental discretion regarding the upbringing and care of children. To do so would undermine parental authority in the very personal endeavor of child rearing and inject the machinery of the state into an area where its presence might be the occasion for family discord.
Id, 527-28.
The defendants argue that the Dubay reasoning applies here. They claim that allegations against Louise Lawson are similar to those in Dubay and that accordingly she should be protected from judicial involvement in her management of family affairs, i.e., detecting and addressing the sexual abuse of her daughter by her husband. CT Page 1208
The plaintiff responds by citing Henderson v. Woolley, 230 Conn. 472
(1994), where the Supreme Court answered the following question certified to it from the U.S. District Court for the District of Connecticut:
 Does the doctrine of parental immunity bar an action by a minor child against his or her parent for personal injuries arising out of sexual abuse, sexual assault or sexual exploitation?
Id., 473, n. 1.
In that case, the plaintiff brought the action against her father for the sexual abuse she suffered during her childhood. While the certified question reads broadly, the case was factually limited to the intentional conduct of the perpetrator. The court answered the certified question in the negative. The court supported its decision with the following reasoning pertinent here:
 Similarly, we do not believe that the purpose of the doctrine would be served by extending it to shield a parent from civil action alleging sexual abuse. Familial discord or dysfunction obviously exists where parental sexual abuse occurs. Therefore, the purpose of the preservation of family harmony cannot justify immunity in the case of sexual abuse of a child by a parent.
. . .
 Furthermore, there is a point at which parental conduct properly becomes a matter of public concern, and sexual abuse, assault and exploitation are well within that realm. When a parent perpetrates such a crime upon his or her child, that act constitutes a breach of duty owed not only to the child, but to the public at large, and there is no reason to immunize such conduct from a civil action in damages merely because of the familial relationship. We conclude that the public policy of this state requires that the parental immunity doctrine not preclude a child victim of parental sexual abuse from vindicating his or her rights by bringing an action for damages.
Id, 482-83.
While the defendant argues that the holding rests on the facts that the acts were intentional and heinous, the court reads the decision more broadly. Further, the defendant states that like Dubay v. Irish, and unlike Henderson v. Woolley, the alleged acts here do not constitute the breach of any duty owed to the public.[2] It is this court's opinion if, in fact, these allegations are proved that they would indeed be a CT Page 1209 matter of public concern. The court agrees with the reasoning of Judge Gormley in Coburn v. Ordner, judicial district of Fairfield at Bridgeport, Docket No. 306715, (March 22, 1995) (14 Conn. L. Rptr. 9), where he addressed similar claims and found that the purpose behind parental immunity would not be served by shielding either parent involved in sexual abuse of a minor child from suit. Public policy will not allow a negligent parent who allows the sexual abuse of her child to occur to be immune from suit.
Because the court has determined that neither the statute of limitations nor the doctrine of parental immunity applies to bar the claims against the defendant Louise Lawson, a genuine issue of material fact exists as to her liability. Accordingly, the motion is denied.
DiPentima, J.